JOSEPH E. COREIL, Judge Pro Tern.
This is an appeal by Mabel Camatte Morris[1], plaintiff-appellant herein, from a judgment in favor of defendants-appellees, Estelle and Leo Malagarie, who were named individually and on behalf of their minor child, Lynnora Malagarie. The judgment granted Morris’s claims against the defendants for past-due rent in the amount of $2300 and $1300 for the repayment of a loan. This portion of the judgment has not been appealed. The trial court denied Morris’s prayer to have an act of donation and cash sale which had been executed on or about October 24, 1988, declared null and void and revoked. Morris appeals this denial. We find no error in the ruling of the trial court and thus, we affirm.
FACTS
The trial court succinctly stated the facts in its reasons for ruling, as follows:
“The plaintiff is an 81 year old widow. The defendant Estelle Blanchard Mala-garie, married to Leo Malagarie, is the granddaughter of the plaintiff. Lynnora Klarr Malagarie is the great-granddaughter of the plaintiff. The evidence showed that on October 24, 1988 Mabel Camette Morris executed a Manual Donation on record at Entry No. 88-032576 and a Cash Sale on record at 88-032578 in Lafayette Parish. The donation indicated that Mabel Camette Morris gave to Leo Malagarie the sum of $7,500.00 cash, to Estelle Blanchard Malagarie, the sum of $7,500.00 in cash, and to Lynnora Ma-lagarie the sum of $5,000.00 cash. In the Cash Sale described above, Mabel Cam-ette Morris sold to Leo Malagarie, Estelle Blanchard Malagarie, and Lynnora Malagarie certain immovable property located at 422 St. Thomas Street, Lafayette, Louisiana. In the document, Mabel Malagarie sold to her great-granddaughter Lynnora Malagarie the naked ownership of that property. In this same document, she sold to her granddaughter Estelle Blanchard Malagarie and her husband Leo Malagarie the joint right of usufruct for the following fifteen years at which time Lynnora Malagarie would reach the age of eighteen years and would become full owner of the property in question. In the document itself, there is a clause which reads ‘I hereby reserve the right to live on this property with the Vendees herein for life.’ ”
Plaintiff, Morris, wants to revoke the cash sale and donation, contending that the trial court erred in failing to find that she *1034 lacked the capacity to enter into a contract on the date of the transfer and, therefore, was unable to give any valid consent to the execution of the contracts. Alternatively, she contends that the documents were executed by her while she was under duress and/or due to misrepresentations put forth by the defendants.
Additionally, she contends that there existed a failure in consideration sufficient to justify recission of the contract insofar as the defendants were allegedly ungrateful and failed to allow her to reasonably live in the home after the execution of the documents. Finally, she contends that the transfer was an absolute nullity insofar as it transferred succession property without first opening the succession.
The trial court, in its well-reasoned ruling, found neither lack of capacity on the part of Mrs. Morris nor fraud, duress, or misrepresentation on the part of the Malagaries. Neither did the trial court find a failure of consideration due to ingratitude on the part of the defendants. The trial court stated the relevant circumstances in support of its ruling as follows:
“In early October of 1988, the evidence indicated that Mrs. Morris became ill and was admitted to Our Lady of Lourdes Hospital under the care of Dr. Shirley Covington. She was admitted for severe abdominal pains and stayed in the hospital six or seven days. At that time, she was diagnosed as having a urinary infection, gastroenteritis, gallstones, hypertension, an enlarged liver and spleen, an abdominal aneurysm, and episodes of confusion. She was treated in the hospital with medication and her pain was somewhat alleviated. Dr. Covington testified that while she was in the hospital under heavy medication, she suffered from episodes of confusion at which time she would see things which did not exist, and walk around in a sort of daze. She was released from the hospital on October 21, 1988 according to the hospital records entered into evidence as Plaintiffs Exhibit No. 3, having been admitted to the hospital on October 14, 1988. Shortly thereafter, on October 24, 1988, the proported [sic] Cash Sale and Donation documents were executed. Dr. Cov-ington testified that while in the hospital, or even shortly thereafter on the date of the sale, in her professional opinion, she did not believe that Mrs. Morris could have executed and understood the Cash Sale and Manual Donations as shown to her while on the witness stand.
“The documents in question were prepared by a local attorney by the name of Mr. Roderick L. Miller. Mr. Miller testified at trial. He does not specifically remember meeting with Mrs. Morris pri- or to the execution of these documents, but he explained to the Court that it is his normal office procedure to meet with the clients first, determine what the client needs, do the appropriate research at the Courthouse, prepare the documents, and request that the client come back into the office to execute the papers. Mr. Miller also testified that in order to keep the title to the property clear, he does the donation of cash and then follows it with a cash sale for the purposes of clear title. Mr. Miller had letters in his file to indicate that he had spoken with Mrs. Morris or Mr. and Mrs. Malagarie concerning the fact that the title to the property was not clear. The property in question was owned in community between Mrs. Morris and her husband. Her husband’s will had never been probated such that the title to the property was not clear. Mr. Miller specifically remembered explaining that to them and suggesting that they open a succession first. A letter to that effect was entered into the record. Mr. Miller also testified that had he noticed any type incapacity on the part of Mrs. Morris, he would never, under any circumstances, have gone through with the execution of this document. The Court is satisfied that on the date in question, Mrs. Malagarie [sic] [Mrs. Morris] fully understood the consequences of her signature on these documents.
“This finding is also substantiated by the fact that Mr. Miller was approached sometimes in 1987 to prepare the same or similar documents. Plaintiffs Exhibit *1035 No. 2 was entered into the record which presents a Cash Sale and Donation of Cash, albeit unexeucted, [sic] but expressing more or less the same intent of those documents that were actually executed in front of Mr. Miller on October 24, 1988.
“The Court does not believe that Mrs. Morris executed these documents under any type of duress or fraud. The Court also fully believes that she understood that she was donating the property to her great-granddaughter, and giving her granddaughter and her husband the usu-fruct over said property until her great-granddaughter reached the age of eighteen. She may not have fully understood the way the Cash Sale and Donation worked for the purposes of clear title, but it’s the Court’s opinion that she fully understood the consequences of her donation and desired the result.
“It should be noted that at some time in 1987, the Malagaries began having financial problems and moved in with Mrs. Morris. There was an agreement reached in which they would pay rent in the amount of $150.00 per month in order to live with her.[2] As part of the arrangement for the Cash Sale and Donations, Mrs. Morris reserved the right (not the usufruct) to live in the house with Mr. and Mrs. Malagarie for life. The Court does not feel that Mrs. Morris was actually denied the right to live in the house. The evidence clearly indicates that she was dissatisfied with the conditions there, but the Court recognizes that all parties involved had limited financial assets such [that the] living arrangements were not and could not be perfect for all parties at that time. The house was small and conditions were crowded. The Court found Mrs. Morris to be a strong-willed individual who spoke her mind. At times, she exhibited an uncanny sense of humor in the courtroom. The Court feels that Mrs. Morris was probably more unhappy about the way she was treated while living in the home than she was about the fact that she had actually donated this property to her great-granddaughter.
[[Image here]]
“Based on the evidence submitted at trial, the Court will deny the plaintiff’s request to declare null and void the pro-ported [sic] Cash Sale at Entry No. 88-032578 and the proported [sic] Donation at Entry No. 88-032576, both on record in the Clerk of Court’s Office in and for the Parish of Lafayette, for lack of sufficient evidence to show that she was under some duress or lacked the capacity to sign on the date in question.”
We agree with the factual findings of the trial court. We also note that the evidence disclosed that Mrs. Morris had, at an earlier time, given her daughter (the substituted appellant herein), another house next door to the house at issue in this case. Witnesses for both the plaintiff and the defendants testified that the plaintiff changed her mind and desired to have the house returned to her from her daughter after the donation. There was also evidence presented by the defendants that Mrs. Morris had given Mr. Malagarie a diamond ring and later asked for its return. Also, Mrs. Morris had given Mrs. Malagar-ie a cash wedding present and later called it a loan and asked to be repaid. We find this evidence consistent with Mrs. Morris’ actions in this case.
Finally, we find no merit in plaintiff’s contention that the sale of the house was null and void because it transferred succession property without first opening the succession. Plaintiff appears, by this allegation, to be contending that she failed to pass good title to the defendants in the cash sale of October 24,1988. This is not a quiet title action, and plaintiff’s alleged failure to pass good title will not act as a basis for the recission of a sale of immovable property.
*1036 CONCLUSION
Based upon the foregoing, we find no clear error in the trial court’s ruling. The judgment of the trial court denying plaintiff’s request to declare null and void the Cash Sale at Entry No. 88-032578 and the Act of Donation at Entry No. 88-032576, both on record in the Clerk of Court’s Office in and for the Parish of Lafayette, is hereby affirmed. Costs of this appeal are to be paid by the substituted plaintiff-appellant, Jessie Messex.
AFFIRMED.

. Morris died after trial, and her daughter and sole heir, Jessie Messex, has been substituted as plaintiff-appellant in this matter.

. In actuality, the Malagaries rented the house in question from Mrs. Morris and, at a later date, Mrs. Morris moved in with them.